DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

AT JUNE TERM, 1871.

---

### JOHN WARE v. THE STATE.

A husband or a wife, in a suit in which neither is a party, can be asked a question for the purpose of disgracing or discrediting the testimony of the other, when the matter inquired into is not an indictable offence.

---

On writ of error to the Court of Oyer and Terminer of Camden county.

At a Court of Oyer and Terminer and General Gaol Delivery, held at Camden, in the county of Camden, in the term of January, 1871, John Ware was indicted for the murder of John A. Ware. He was afterwards tried in February of the same year, when the jury rendered a verdict against him in the following form, that he "is guilty of the felony and homicide on him above charged in the form aforesaid, as by the counts of the indictment is above supposed against him, of the first degree." In the same term sentence of death was pronounced against him.

On the trial of the case, four bills of exception were prayed

553

and sealed on behalf of the defendant, relating to the admission of evidence, alleged to be incompetent, and to the exclusion of evidence charged to be competent.

In May, 1871, a writ of error was applied for and followed by the Chancellor, to remove the judgment and proceedings from the said Court of Oyer and Terminer into this court, according to the form of the statute. Upon the return of the writ, the several bills of exception were also returned to the court, and the errors assigned were, in substance—

1. That the court below, on the trial of the same cause, excluded lawful evidence offered by the defendant.

2. That unlawful evidence was admitted against him.

3. That the verdict of the jury was repugnant, inconsistent and void.

4. General error.

The cause was argued in this court in the term of June, 1871.

For the plaintiff in error, *J. M. Scovel.*

For the state, *R. S. Jenkins.*

The opinion of the court was delivered by

THE CHANCELLOR. The plaintiff in error was convicted of the murder of John A. Ware, in the Court of Oyer and Terminer for the county of Camden. The errors are assigned upon the bill of exception returned with the record. The first exception, the only one relied on for reversal, is to the ruling of the court excluding the testimony of Samuel Champion, as to the character for truth and veracity of his wife, Mary Ann Champion, who had been examined as a witness on the part of the state.

This witness had testified that she was present at the homicide in question, and saw the defendant shoot John A. Ware, and to many other matters, to prove the issue on part of the state. She was the wife of Samuel Champion, but had been living separate from him for some years. The court over-

ruled the question put to the husband, as to the character of his wife for truth and veracity, " on the ground that the same was illegal, because opposed to public policy."

The question is, whether a husband or wife, in a suit to which neither is a party, can be asked a question for the purpose of disgracing or discrediting the testimony of the other, when the matter inquired into is not an indictable offence.

This question has been settled in this state by two decisions in the Supreme Court, in which it was carefully considered. The first was the case of *Den d. Stewart* v. *Johnson*, 3 *Harr.* 87. The wife, in that case, was offered to prove that her husband had committed a fraud upon his creditors, by conveying his property so as to protect it from their executions.

This fraud was no crime or indictable offence, and the question considered and decided was, whether the testimony of the wife against the husband was excluded in any other case than when it charged him with an indictable offence. Three of the judges delivered opinions, and the previous decisions on the point seem to have been thoroughly examined and considered; and although the inclination of the Chief Justice was the other way, he felt constrained by the decisions to agree with the three other justices, in holding that the wife was bound to testify as to matters that might disgrace her husband, provided her evidence did not charge him with a crime or indictable offence. The courts in England hold that in cases to which he is not a party, she may testify as to facts that tend to criminate or are part of the proof required to convict him of crime, provided the act proved by her is in itself no crime, as that she may prove the first marriage with herself, it being a lawful act, for which he could not be indicted.

This decision has remained as the law of this state for more than thirty years. And in the case of *The State* v. *Wilson and Wagner*, 2 *Vroom* 77, the question again arose, and was considered by the Supreme Court. The opinion of the court, delivered by Chief Justice Beasley, thoroughly reviewed the whole ground, and very clearly states the result to

be in accordance with the decision in *Den* v. *Johnson;* a wife is competent, in a collateral proceeding, to prove against her husband any fact, unless it directly charges him with a crime or indictable offence. With the conclusion arrived at in those two cases, this court concurs, both on their authority and that of the cases upon which they are based.

The ground on which it is contended that a wife should be excluded from giving any evidence against her husband is, that it is against the policy of the law, which aims at preserving harmony and peace between husband and wife, and therefore excludes such evidence. The cases above referred to, and the decisions on which they rest, have settled that that policy only extends to such evidence as charges crime. But had they not so limited the rule, I apprehend that the act of 1870, chapter fifty-three, must be held to limit the rule of exclusion in the same manner. That act expressly authorizes and compels husband and wife to testify against each other, except in criminal actions, and one or two other matters not affecting this question. The supposed policy of the law to preserve harmony between man and wife, by excluding their evidence against each other in any case except criminal cases, is changed by this act, declaring that they shall be witnesses in all other cases directly for or against each other. I do not think that this act should be construed further to change the rule, and to permit them in collateral suits to give evidence charging crime or indictable offences. In criminal proceedings against either, they are still excluded. And the rule founded on the policy must be that the exclusion should still prevent either from testifying to facts directly charging the other with crime.

The case of *Stapleton* v. *Crofts*, 18 *Ad. & El.* 367, cited on the argument, and the case of *Barbot* v. *Allen*, 7 *Excheq.* 609, referred to in that case, do not affect the question before us. They are on the question whether the last clause of section three of *The Stat.* 14 and 15 *Vict., ch.* 99, does not, by implication, extend the provisions of section two, which allows parties to give evidence, so as to include the husband or wife of a party. This clause provides that nothing in the act shall,

Ware v. State.

in any criminal proceeding, render a husband or wife compe-tent or compellable to give evidence against the other. It was contended with much plausibility, on the ground that *enumeratio unius est exclusio alterius*, that this made them com-petent in civil actions. It was held that it did not. But it is the mere question of the construction of that particular act, worded as it was, and cannot affect the question under consid-eration as to the effect of the act of 1870.

The evidence offered in this case, that the reputation of his wife for truth and veracity was bad in the neighborhood, did not charge, or tend to charge her, with a criminal offence. Had he testified directly that she was, to his knowledge, an habitual and incorrigible liar, never to be believed, he would have charged her with no crime.

The act of 1855 (*Nix. Dig.* 227, § 45,*) declares that no judgment given upon any indictment shall be reversed for any error, except such as shall *or may* have prejudiced the defendant in maintaining his defence upon the merits. It is contended that this is not such error, or, at least, that if the whole evidence was before us, and not merely the small part included in the bill of exceptions, it would so appear. But we must decide upon the case before us. The witness whose veracity was attempted to be impeached, was an important one. She was produced by the state, to prove the fact of killing, and the manner in which it was done. She was present. If her character for veracity was impeached or des-troyed, the effect of her evidence would have been impaired or done away with; and no evidence given in the case, were it all before us, could have shown us that the jury, or any one of them, did not regard or rely upon the testimony of this eye-witness. The judgment must be reversed.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, SCUDDER, VAN SYCKEL, KENNEDY, LATHROP, OLDEN, WALES—9.

*For affirmance*—BEDLE, DALRIMPLE, CLEMENT, OGDEN. 4.

* *Rev.*, p. 284, ¾ 89.